## STALLSWORTH, ET AL. v. STALLSWORTH, Ex'R.

1 When a general and particular intent are equally apparent on a will, and are so repugnant to each other that both cannot stand together, the latter must yield to the former; but it is the duty of the court, if possible, to put such a construction on the will as will give effect to every part of it.

2. When a testator, by his will, bequeathed slaves to his children, and afterwards directed a tract of land to be set apart for the use of his wife and the minor children, together with horses, stock, &c. for their exclusive use, until the youngest child, who may then be living, arrives at the age of twenty-one, and then that the real estate be sold and equally divided between the wife and such of the minors as might then be alive—held, that there was no incongruity between these clauses of the will, but that both could stand together—that the intention of the testator was that the minor heirs were entitled to their legacies

as soon as distribution could be made, and had the right to work their slaves on the land set apart in concert with their mother.

3. A judgment of the county court, refusing to appoint an individual guardian of the estate of certain minors, is not a bar to a suit in chancery, by the minors to recover their legacies.

ERROR to the Chancery Court at Conecuh.

This bill was filed by the plaintiff in error, as the next friend of three infant children of Nicholas Stallsworth; Eldridge, Benjamin and William.

The bill alleges, that the father of complainants, executed his will in such a manner as to pass lands, and died, leaving the defendant his executor, who has qualified as such, and taken upon himself the execution of the will; paid the debts, &c., and settled with the widow of the deceased, and several of the heirs. That complainants are entitled to certain slaves in the hands of the executor, as specific legatees under the will, and pray an account against the executor, and that he be decreed to deliver to them or their guardian the slaves belonging to them. The bill is filed by one Davidson, who intermarried with the widow of the deceased, as next friend of the minors.

The will is made an exhibit.

The 1st section is, I give to my son Eldridge G. Stallsworth, negro man Hall, and his wife Mary, and their children, six in number.

2. I give unto Benjamin F. Stallsworth, negro woman Lucy, Presley, and her five children, and young fellow Aaron and long head Jim.

3. I give unto my son Wm. A. Stallsworth, negro woman Molly, and her five children, together with Ransom, and his wife Louisa and child, with their increase.

8th section. It is my will and desire, that all my real estate lying on the east side of Beaver creek, on which I now reside, to be set aside for the use and benefit of my beloved wife, and our minor children, to wit: Eldridge G, Benjamin F, and James A, and my daughter Sarah, also my son William A, to be, and remain for their exclusive use, until the youngest child that may then be living, arrives at the age of twenty-one, then my will is, that the above real estate be sold, and equally divided between

my wife and our said minor children, or as many as may then be living.

12th sec. It is my will, that my beloved wife keep as many horses and mules, as may needed for the use of the plantation, and comfort of the family, together with as much stock of every kind, of which I am possessed, as the family may require; the balance of my stock of every kind, I wish to be sold, together with all surplus property, and be equally divided among my heirs.

13th. It is my will that the residue of my negroes, with the exception of old negro man Ned, be valued and put into eleven equal parts, regard being had to the families of negroes; if some lots should be more valuable than others, the difference to be made up in money, and that each of my children, that is to say, Calloway H, Nicholas, Mark P, Joseph J, James A, William A, Nancy Johnson, Mary Travis, and Sarah J, each draw one share for their own use and behoof. In case of my demise before the present crop is gathered, my will is, that every thing stand as it now is until the crop is housed. The money arising from the proceeds to go towards paying my debts, and if there be any left, to be divided equally between my wife and children above named.

The answer of the defendant, admits the will and the legacies as set out, and sets up an account and division of the other property, not specifically bequeathed, and shows the sum due to each, and the property of each; but insists on two distinct grounds of defence—that by the will, he was authorised to retain the property, until the complainants respectively became of age, and was not bound as executor, to pay over until then. Second, that application for distribution and payment of the legacies had been made to the Orphans' Court, and was determined against complainants. Third, that Davidson, their next friend, was not the guardian of their estate, but only of their persons.

The chancellor was of opinion that the matters in dispute had been substantially settled by a decree of the Orphans' Court, and could not be revised in chancery, but upon the ground of fraud, accident or mistake. He further decreed that the bill must be dismissed, because, by the proper construction of the will, the property bequeathed to the complainants, was to be retained in the possession of the executor, until the youngest child came of age.

From this decree, this writ of error is prosecuted.

The assignments of error, present for consideration the decree made by the chancellor.

DARGAN, for plaintiff in error.

BLOUNT, *contra*—cited 4 S. & P. 123; 5 Porter, 388; 6 ib. 77; 2 Ala. Rep. 529; 8 Cranch, 9; 9 Porter, 636; Ram. on Wills, ch. 12, 13.

ORMOND, J.—This bill is filed for the purpose of compelling the executor to deliver to the guardian of the infant complainants, certain slaves, bequeathed to them by the will of their father, and for an account. The entire controversy depends upon the true construction of the will.

The first five clauses of the will, consists, of specific bequests to five minor children, to each, by name, of certain slaves specifically described. The sixth and seventh, are also specific bequests of slaves to another child, and to his wife. The eighth clause, out of which this controversy arises, is to the following effect:

" It is my will and desire, that all my real estate, lying on the east side of Beaver creek, on which I now reside, be set aside for the use and benefit of my beloved wife, and our minor children, to wit: Eldridge G, Benjamin F, James A, my daughter Sarah J, and my son William A. Stallsworth, to be, and remain for their exclusive use, until the youngest child that may then be living, arrives at the age of twenty-one, then my will is, that the above real estate be sold, and equally divided between my wife Sarah, and our said minor children, or so many as may then be living."

The ninth clause conveys a tract of land to three adult children. The tenth and eleventh, are bequests to certain grand-children. The twelfth, which is also supposed material in this inquiry, is to the following import: " It is my will that my wife keep as many horses and mules, as may be needed for the use of the plantation, and comfort of the family, together with as much stock of every kind, of which I am possessed, as the family and plantation may require; the balance of my stock of every kind, I wish to be sold, together with the surplus property of every kind, and be equally divided among my heirs."

By the thirteenth clause, the testator desires that all the rest of his negroes be divided into eleven equal parts, each of his children to have one share "for their own proper use and behoof." All

the residue of his estate, to be equally divided among his wife and children; and lastly, he declares his son Nicholas, executor.

The general scheme of this will is quite apparent and very simple. The specific legacies of slaves, to the younger children, was doubtless to make them equal with the older children—then comes an equal division of all the. slaves and other personal property among *all* the children, a particular estate in lands to three of the children, who are probably adults, and a tract of land which is left for the use and benefit of the wife and five minor children, until the youngest child comes of age, and then, to be equally divided between the wife and such of the children as may then be living.

This last clause, has created all the difficulty in this cause, as it is supposed, that taken in connection with the twelfth clause, it shows that the design of the testator was, that the wife and the minor children, should work the plantation, which was given for their use and benefit, under the care of the executor, who, it is further inferred, was for this purpose, in effect created testamentary guardian of the minors.

We cannot agree that this construction of the will is correct. The rule of interpretation invoked to sustain this view, is the rule, that when two intentions are apparent in a will, one *particular*, and the other *general*, if both cannot stand, the former must yield to the latter. The case of Robinson v. Robinson, [1 Burrows, 38] illustrates this rule and shows the reason on which it is founded; that was an issue out of chancery to ascertain the opinion of the Court of King's Bench, on a bequest in a will. The bequest was to L. H, for, and during the term of his natural life, and *no longer;* after his decease, to such son as he shall have lawfully begotten, and for default of *such issue*, then to W. R, and his heirs for ever.

In this case, it could not be doubted that the testator intended that L. H, should take an estate for *life only;* it was equally clear however, that he intended that the children of L. H, should take as heirs, because W. R, was not to take until failure of the heirs male of L. H. But this was inconsistent with the idea that L H, took an estate for life only. Therefore the court held "that the true construction of the will, was that L H, must by *necessary implication to effectuate* the *manifest* general intent, of the

testator, be construed to take an estate in *tail male*, notwithstanding the *express* estate devised to him for his *life and no longer*.

Before this rule of interpretation can be called into active exercise, it must be evident that there is both a particular and a general intent apparent on the will so repugnant to each other that they cannot co-exist together; for the most important of all the rules for the exposition of wills, and other instruments is, that effect, must, if possible be given to every part of it.

Now, in this will, it is clear, beyond doubt, that the slaves are given to the minor children, without condition or limitation as to the time when they are to be entitled to receive them. They are therefore entitled to them, immediately on the settlement of the estate; and that event had taken place before the filing of this bill. Is there any general intention equally clear, or more certain than these specific bequests, so repugnant to them that their plain literal meaning must be rejected, and the enjoyment of the legacies be postponed to a distant period, to carry such intention into effect.

The eighth clause of the will, which it is supposed renders this interpretation necessary, merely provides that a tract of land shall be set apart for the benefit of the wife, and the minor children, until the youngest child becomes of age. But this clause is by no means inconsistent with the former clauses of the will, giving to the minors a present right to the possession and enjoyment of their slaves.

It may doubtless fairly be presumed that the testator expected that his minor children, in concert with their mother, would work the plantation, set apart for their use, until they severally came of age, and that a sufficient inducement was held out to those who might have the superintendence of their interests, to adopt that course by providing the means of the profitable employment of their slaves, and by thus furnishing both the slaves and the minors a home. Whether the testator intended that this employment of the slaves of the minors, should be obligatory on the minors or their guardian, it is not necessary now to determine.

It is not a fair interpretation of the will, that to carry this intention into effect, the executor was appointed testamentary guardian of the minors. First, because if such had been the intention of the testator, it would in all probability have been so expressed. The attention of the testator was drawn to the subject, as he

doubtless, (as has already been stated) expected his minor children to live with their mother on the plantation, set apart for their use, and that the plantation should be worked by the slaves of the mother and the minors; yet with this view of the subject present to his mind, he merely appoints the defendant in error, his executor, the duties of which are essentially distinct from that of guardian; it cannot therefore be assumed that he intended the executor should act in both capacities, unless such implication must be made, to give effect to the manifest general intent of the testator.

But secondly, such an interpretation is not necessary, because full effect can be given to the will without it. The guardian appointed by the Orphans' Court will certainly be as competent to give the proper direction to the labor of the slaves as a testamentary guardian would be, and will be as much bound to conform to the provisions of the will. We are therefore, clear in the opinion, that the executor was not appointed testamentary guardian of the minors, because he is not so nominated in the will, and such an interpretation is not necessary to carry its provisions into effect. Not being necessary to carry the will into effect, such a decision is to interpolate, and not to interpret the will. The reason of the rule, therefore, so strenuously relied on, fails in this case. The particular intent, as it is called, is clear, the supposed general intent less certain; and both—admitting both to exist and be equally certain, may well stand together.

The principle here decided, received the approbation of this court in the case of Capel's heirs v. McMillan, [8 Porter, 204] when the court held, that in order to give the property left to minors, any other than its accustomed destination, or to give the executor any other power over it beyond what his appointment of executor gave him; the intention of the testator for the exercise of such power must appear in the will by plain language, or from clear implication.

We are also of the opinion that the judgment of the county court, refusing to appoint the *prochein ami* of the minors in this case, guardian of the estate of the infants, is no bar to this proceeding. Without entering at this time, upon the question, how far the powers of the Orphans' court, and the court of chancery, are concurrent in these matters, or in what particular the powers of either are exclusive, a question somewhat discussed in the case

of Leavens v. Butler, [8 Porter, 380;] it is sufficient ta say, that the question here presented was not adjudicated by the Orphans' court.

The question before that court, was an application for the guardianship of the estates of the minors. This did not involve necessarily the construction of the will, which could only properly arise upon an application by the guardian for the legacy of the minors. The reason which may have influenced the court in refusing to appoint Davidson guardian of the estate of the minors, is entirely distinct from its judgment, which may have been correct, though the reason given for it, was incorrect. As the construction of the will was not necessarily involved in that application, that question would not have arisen in this court upon an appeal from that judgment, and cannot conclude the parties as to any matter not necessary to be determined by the Orphans' court upon that application.

Our conclusion therefore is, that by the will, the minor children took a present interest in the slaves and other personal property, with a right to the possession, by their guardian, so soon as the estate was in a condition for distribution. That the minor children have the right, by their guardian, to work their slaves on the plantation designated in the will, and to receive their relative proportion of the profits until they severally come of age, and that the executor is not, by the will, appointed testamentary guardian of the minors.

It results from this view, that the decree of the chancellor dismissing the bill, must be reversed; and the cause remanded for further proceedings.