## HUCKABEE'S ADM'R *vs.* ANDREWS.

[PROCEEDING BY WIDOW FOR RECOVERY OF DISTRIBUTIVE SHARE OF ESTATE OF DECEASED HUSBAND.]

1. *Wife's interest as distributee in estate of deceased husband.*—In estimating a widow's distributive interest in the estate of her deceased husband, (Code, §§ 1991–92,) property secured to her sole and separate use under the provisions of her father's will is not to be considered as a part of her separate statutory estate ; *secus*, as to slaves received by her under the allotment of the commissioners appointed to divide her father's estate, in payment of a sum of money which he held as her trustee under the will of her grandmother, and which was not bequeathed to her sole and separate use.

2. *Bequest construed not to create separate estate in wife.*—Where a testatrix devised and bequeathed one-fourth part of her entire estate to each of her sons and sons-in-law, as trustee, " upon the following uses and trusts"—viz., to the first, " that he shall take possession of the same at my death, and have and hold it *for the sole use, benefit and behoof* of his five children ;" to the second, " that he shall take possession of the same at my death, and have and hold it *for the sole proper benefit, use and advantage* of his six children ;" to the third, " that he shall take possession of the same at my death, and have and hold it *to the only proper use, benefit and advantage* of his three youngest children ;" and to the fourth, " that he shall take possession of the same at my death, and have and hold it *to the only proper use, benefit and advantage* of his children,"—*held*, that a grand-daughter who claimed under the second clause, and who was unmarried at the death of the testatrix, did not take a separate estate in the property bequeathed to her.

APPEAL from the Probate Court of Greene.

In the matter of the estate of George F. Huckabee, deceased, on the petition of his widow (now Mrs. Harriet H. Andrews) for her distributive share of the estate. The decedent was married to the petitioner in January, 1842 (?) and died in March, 1851. The only controversy in the case was in reference to the title by which the petitioner held certain slaves, to-wit, Bob, Dolly and child, Miles, Irene and Rose; the question being whether they constituted a part of her separate statutory estate. The probate court ruled that these slaves did not constitute a part of her separate statutory estate, and its ruling is here assigned as error.

S. F. HALE, and WM. M. BROOKS, for appellant.

WM. P. WEBB, *contra*.

STONE, J.—The arguments of counsel narrow our labors in this case to a single inquiry: Did Mrs. Andrews acquire the slaves Bob, Dolly and child, Miles, Irene and Rose, under the will of her grand-mother, Mrs. Ann Davis, or under the will of her father, W. J. Croom? If she acquired this property from Mrs. Davis, then it is governed by the statutes securing to married women their separate estates; if from her father, then it is not governed by said statutes; for, by the will of her father, the property given to her was, in express terms, secured to her sole and separate use. If this property came to her under her grand-mother's will, then, under the Code, (§§ 1991, 1992,) it should be estimated in the allotment of her distributive share in her husband's estate.—See Smith v. Smith, 30 Ala. 642.

The facts of this case may be thus stated: Mr. Croom, at the time of his death, was trustee for his daughter, Mrs. Andrews, so constituted by the will of Mrs. Davis; and, as such trustee, had in his hands, belonging to her, a money fund, which was after his death ascertained to be about $3,500. Mr. Croom had several other children, some of whom were entitled to a legacy under Mrs.

Davis' will, and others had been advanced by Mr. Croom himself. Others of his children had not been advanced. In the disposition of his property by will, he expressed a desire and intention to equalize, as nearly as he could, the fortunes of his children. The advancements he had himself made to several of his children, he set down at the equivalent of seven average working hands. He directed that his children who had not been advanced should have assigned to each of them seven average working hands, and that such as had been partially advanced should have the advancements increased up to the like standard. Four of his children, including Mrs. Andrews, had received property under the will of their grandmother. The language of a codicil to Mr. Croom's will, in reference to this class of his children, is as follows: "I do hereby alter the seventh clause of my said will, and desire that such of my children to whom, by the provisions of said clause, such a lot of negroes are to be set apart as shall be equal to seven average working hands, and as also in the eighth clause of my said will are recited to have had a bequest or bequests made to them by the will of my mother, or to whom a deed of gift, as in said eighth clause is mentioned, was made by myself, that those children, instead of having seven average working hands set apart for them, shall have set apart to each of them such a lot of negroes as, together with the property each of said children shall then hold under the said will of my mother and the said deeds of gift in the said eighth clause mentioned, shall be equal to seven average working hands." He then directed, that the values of the property held by his children under his mother's will, and under the deeds of gift, should be ascertained by the commissioners appointed to divide and allot his property, for which he had made provision in his will.

After the probate of Mr. Croom's will, commissioners were appointed to carry out and perfect its provisions. They reported that Mrs. Andrews had received slaves, (Emanuel, or George, and Mary Davis,) under Mrs. Ann Davis' will, of the value of $1,550; and there was wanting to make her property, thus received, equal to the value

of seven average working hands, the further sum of $3,350.
This, it will be observed, was less than the money debt
due from the estate of Mr. Croom, as trustee, to Mrs.
Andrews. The commissioners thereupon allotted to Mrs.
Andrews, out of the estate of Mr. Croom, the slaves Bob,
Dolly and child, Miles, Irene and Rose, and $100 in
money, which they valued at $3,550; added to the $1,550,
making $4,900, the value of seven average working hands.
The said slaves and money were turned over to Mrs.
Andrews, and received by her; and the commisssioners
reported, that " these receipts by her are in full of her
claim upon Wiley Croom's estate, for her interest under
Mrs. Davis' will."

It is manifest, that neither the executor, nor the com-
missioners, had any authority, if the question were before
us, to pay the money debt of Mr. Croom's estate in
property belonging to the estate. This mode of payment,
however, seems to have been resorted to by consent:
This being the case, we find nothing in the proceedings
in the probate court, or in the will of Mr. Croom, which
authorizes us to hold that the title of Mrs. Andrews to
this property is controlled by the provisions of his will.
Property was paid and received, not as property bequeathed
by the will, but as a substitute for money in the payment
of a debt. If it was not so paid, then the debt of $3,500,
which Mr. Croom owed his daughter, has not been paid,
but still stands against his estate. If it was not so paid,
then the slaves, Bob, Dolly, &c., were improperly allotted
to Mrs. Andrews; for, under the will of her father, she
was only entitled to have set apart to her such lot of
negroes as, together with the property derived from her
grand-mother's will, would make her share equal to seven
average working hands. To hold that it was not so paid,
would falsify the report of the commissioners, who certi-
fied that Mrs. Andrews received this property *in full of
her claim upon Wiley Croom's estate, for her interest under
Mrs. Davis' will.*

We hold, that the probate court erred in not estimating
the value of Bob, Dolly and child, Miles, Irene and Rose,
as a part of Mrs. Andrews' separate statutory estate, in

42

graduating the amount to which she was entitled as distributee in Mr. Huckabee's estate.

Reversed and remanded.

[2.] When this case was argued, no question was raised as to the construction of Mrs. Anna Davis' will. The argument, both oral and written, seemed to concede that the words of her will, unaided by our · statutes enacted since that will became operative, did not exclude the marital rights of Mr. Huckabee, the first husband of Mrs. Andrews. Since writing the foregoing opinion, an additional brief has been submitted for the appellee, which takes the ground, that the slaves Bob, Dolly and child, Miles, Irene and Rose, even if acquired under the will of Mrs. Davis, are made the separate estate of Mrs. Andrews by the terms of that instrument.

In the case of Johnson v. Johnson, 32 Ala. 637, speaking of this subject, we said : "The exclusion [of the husband's marital rights] is not to be inferred from doubtful and equivocal expressions. The court is not to speculate upon what the probable object of the donor was; nor can it base a conclusion, adverse to the husband's interest, upon a possibility or probability. The tendency of modern decisions is not to relax, but to restrict the rule." See the numerous authorities cited and commented on in that opinion.

The settled rule is, that to constitute a separate estate, the intention to exclude the marital rights of the husband must be clearly expressed. No technical words are necessary to effect this object, but any words, which *clearly express* the intention, are sufficient. It results necessarily, as a corollary from this, that if the words employed do not clearly express the intention to exclude the husband's rights, they must be held insufficient.

It is also settled, that when the grant or bequest is to an unmarried female, stronger and less equivocal language is required, than if the grantee or legatee be, at the time, a married woman.—Cuthbert v. Wolfe, 19 Ala. 373; Gould v. Hill, 18 Ala. 84; Ozley v. Ikelheimer, 26 Ala. 332.

It is a cardinal principle in the construction of wills, to

look, if necessary, to the whole instrument, in order to find out the meaning of a particular clause.—Capel's Heirs v. McMillan, 8 Porter, 197 ; Leavins v. Butler, *ib.* 380 ; Stallworth v. Stallworth, 5 Ala. 143 ; Vanzant v. Morris, 25 Ala. 285 ; Thrasher v. Ingram, 32 Ala. 645.

The will of Mrs. Davis divided her estate into four equal parts, and, overleaping her children, gave the property, by four separate clauses, to as many classes of her grand-children.   The first and second clauses, so far as the question we are considering is concerned, are substantially alike ; each giving a fourth of her estate to each of her two sons, Jesse H. Croom and Wiley J. Croom, *in trust,* and expressly naming them *my* [her] *lawful trustees.*   The language of the clause to Wiley J., under which clause Mrs. Andrews claims, is as follows : " Upon the following uses and trusts—viz., that he shall take possession of the same at my death, and have and hold the same for the sole, proper benefit, use and advantage of his six children, Wiley T. Croom, John L. Croom, Sylvester P. Croom, *Harriet H. Croom,* Mary L. Croom, and Susan J. Croom, to them, their administrators and assigns, as tenants in common.".

The other two clauses likewise appoint trustees, and convey the property upon "*the following uses and trusts, and none other*—viz., to have and hold the same to the only, proper use, benefit and advantage of his three youngest children," &c.   In each of the four classes of legatees, are both males and females, and no distinction is attempted as to the manner of their holding.

If the words *sole* and *only,* when applied to the female legatees, be held to be words of exclusion, they must have the same signification when applied to the male legatees. If so applied, they lead to a most absurd result.

We think the words *sole* and *only* are used convertibly in this will, and that the only purpose of their employment was to exclude all beneficial interest in the trustees named.   We feel justified in this legal conclusion, by the fact that, at the time this will was executed, Mrs. Andrews, and doubtless others of the legatees, were unmarried,—in fact, were mere children ; and the possession and

control of the property was, for a time, committed to the several trustees.

We have examined the case of Anderson v. Brooks, (or Hooks,) 11 Ala. 953. In that case, Mrs. Harris, the beneficiary, was a married woman; and it does not appear that any of her children were males. There may, also, be other differences. It is manifest, however, that the question we are considering was not noticed in that case.

We adhere to our conclusion announced above, that the judgment of the probate court must be reversed, and the cause remanded.