# Enloe *v.* Reike *et al.*

*Motion for Summary Judgment against County-Treasurer and
Sureties on Official Bond.*

1. *Summary remedies.*—When a party resorts to a summary statutory rem-
edy, the statute must be strictly followed in all matters of substance, and the
record must affirmatively show every material fact necessary to sustain the
proceeding.

2. *Who may sue county treasurer, as assignee of allowed claim against county.*—
A summary proceeding against a county treasurer, for failing to pay an allowed
claim against the county, when there are funds in the treasury to pay the same
(Rev. Code, § 930), can only be maintained by "the party to whom the claim
is payable, his legal representatives, or *assigns ;*" meaning thereby a transfer
in writing, and not by delivery only.

3. *Pauper claims ; when preferred, and how enforced by summary proceeding.*—
The act "for the relief of the poor," approved December 15, 1868 (Sess. Acts,
414), provides for only two classes of paupers, and makes bills for their sup-
port and maintenance preferred claims against the county—namely, "pau-
pers living on poor farms," and those living "at the public charge;" and ,
when bills for the support and maintenance of such paupers have been al-
lowed, and their payment as preferred claims is sought to be enforced by a
summary proceeding against the county treasurer (Rev. Code, § 930), the no-
tice, motion, or complaint must designate the class to which they belong, and
their character must be proved; and if there is no trial by jury, the record
must show that these facts were found by the court.

4. *Same ; how far preferred over other claims.*—The said statute, while de-
claring such pauper claims "to be preferred claims against the county," only
gives them priority over county liabilities generally, but does not repeal, nor
supersede the former statute (Rev. Code, § 926, subd. 7*a*), which requires the
county treasurer to set apart a fund for paying jurors and county commission-
ers, and procuring stationery for the county.

5. *Repealing statutes.*—The repeal of statutes by implication is not favored,
and is only declared when there is an irreconcilable repugnancy between two
statutes of different dates; and if effect can be given to even a part of the
provisions of the older statute, a partial repeal only will be declared.

APPEAL from the Circuit Court of Randolph.

Tried before the Hon. JOHN HENDERSON.

This action was brought by C. C. Enloe, the appellant,
against Frederick Reike, county treasurer of said county,
and the sureties on his official bond as such treasurer; and
was commenced on the 6th February, 1875. The notice by
which the proceeding was commenced, and which was served
on the defendants on the 9th February, 1875, stated that, at
the next term of the Circuit Court of said county, to be held

on the third Monday in February, 1875, the plaintiff would " move for a judgment against said F. Reike, as county treas- urer of said county, and against each of the sureties on his official bond as such treasurer, for the sum of one hundred and fifty dollars, with interest from the demand, ten per cent. damages, and costs, for the failure of said F. Reike, as such treasurer, after demand duly and legally made upon him by the said C. C. Enloe, to pay over to the said C. C. Enloe the amount of each of the following described claims, allowed by the Commissioners' Court of Randolph county, to and for the following paupers," describing the claim by its num- ber, amount, date of issue and registration, and the name of the person to whom payable;" there being money in the treasury of said county, sufficient and liable to pay the same, at the time said demand was made, to-wit, on the 5th Feb- ruary, 1875; said claims each having been assigned to the said C. C. Enloe by the said persons to whom they were re- spectively issued, for a good and valid consideration paid to them by him, before the said demand on the said F. Reike, as such county treasurer, was made by the said C. C. Enloe ; and said Enloe makes this motion as the assignee of each of the persons above named, to whom said claims were issued." The motion entered on the docket was in the same words.

The defendants demurred to the notice and motion, speci- fying the following (with other) grounds of demurrer : 1st, that it is not alleged with sufficient certainty that the plain- tiff is the assignee of the several claims; 2d, that there is no sufficient allegation of the allowance of the claims by the Commissioners' Court; 3d, that there is no sufficient aver- ment that said Reike had money with which to pay said claims when payment thereof was demanded. The court overruled the demurrer, and the defendants then pleaded— 1st, " that said Reike is not guilty as charged in said mo- tion ;" 2d, "that at the time of said alleged demand, said Reike had in his hands, as county treasurer, only the sum of $1,259.37 in cash, and it required the sum of $2,630 to pay the grand and petit jurors of said county, the sheriff's bailiffs to wait on the Circuit Court, and stationery for said county the present year, and he had then set aside said sum of $1,259.37 to pay said claims, as by law required to do ;" 3d, "that at the time of said alleged demand, there were on the books of the county treasurer claims duly allowed by the Commis- sioners' Court of said county to the amount of $921.30, which was registered before the 15th December, 1868, and were and are still unpaid ; and, in addition to said sum of $921.30, there was registered and outstanding against said county the sum of $626.82, for jurors, sheriff's bailiffs, fees of county

commissioners, and stationery for the county; which claims were duly allowed by the Commissioners' Court of said county, and were registered before the 9th February, 1874, which is the date of plaintiff's oldest claim: wherefore, these defendants say, that said Reike, as county treasurer, did not have in his possession, or under his control, at the time of said alleged demand, money with which to pay said claims, or either of them." The plaintiff demurred to the 2d and 3d pleas, and his demurrer was sustained as to the 3d, but overruled as to the 2d plea. Issue being then joined on the 1st and 2d pleas, the case was submitted to the court for decision, neither party demanding a jury.

On the trial, as the bill of exceptions states, the plaintiff offered in evidence the several claims described in the notice and motion; and it was admitted that said claims belonged to him, and that he had paid a valuable consideration for them; but there was no written transfer or assignment of any of them. The defendants objected to their admission as evidence, because they had not been transferred by written assignment; but the court overruled their objection. The plaintiff introduced said Reike as a witness, who testified, in substance, that on the day of the demand made on him by plaintiff, he had in his hands the sum of $1,259.37 of the general taxes of the county; that the estimated expenses for the then next term of the Circuit Court were $703 for jurors and bailiffs, which he had since paid out of said money in his hands; that it would require about $800 to pay the county commissioners and furnish necessary stationery for county purposes during that year, and he was holding the balance of the money in his hands for that purpose; and that he had never made any order, or memorandum, in any book in his office, setting aside said sum of $1,259.30 for these purposes. Other evidence was introduced as to the estimated expenses of the county, which it is not necessary to notice. On all the evidence adduced, which is set out in the bill of exceptions, the court "overruled and dismissed the plaintiff's motion;" to which the plaintiff excepted, and which he now assigns as error, together with other rulings to which he reserved exceptions.

SMITH & SMITH, for the appellant.—The material question of this case is the construction of the act approved December 15, 1868, giving pauper claims a preference over other county claims. The statute is remedial, and should be liberally construed, "so as to suppress the mischief and advance the remedy."—Sedgwick on Stat. & Con. Law, 359; *Blakeney v. Blakeney*, 6 Porter, 109; *Sprowl v. Lawrence*, 33

Ala. 674. The evil and mischief which the statute was in-
tended to remedy, was that, under the laws then existing,
the poor received little actual benefit from the provisions
made for their support, because, under the operation of sec-
tion 926 of the Revised Code, the revenue of the county was
expended in paying other claims. To remedy this evil, the
statute declares that pauper claims shall have a preference
and priority over other claims; that is, over all other claims,
notwithstanding any preference among them under existing
laws. The two statutes are *in pari materia*, and are to be
construed together, giving operation to each, so far as prac-
ticable; and if there is any irreconcilable conflict, the older
law must yield to the later. The two statutes can stand to-
gether, and each have its own field of operation, by giving
pauper claims a preference over all others, and allowing a
secondary preference to the claims mentioned in section 926.
Any other construction would defeat the legislative will, and
make a prior statute repeal and abrogate a subsequent one.
Besides, section 926 does not require the treasurer to set
aside the first moneys he receives for the purposes therein
specified, nor to set it all aside at once: he is to set it
aside "from time to time;" and the treasurer's own testi-
mony shows that, in fact, he had not set it aside when the
plaintiff's demand on him was made.

JAMES AIKEN, *contra*, contended that the act of 1868 did
not repeal section 926 of the Revised Code, and that an as-
signment by delivery merely did not confer such title as au-
thorized the assignee to maintain the action in his own
name.

STONE, J.—Where a summary remedy, given by statute,
is resorted to, the statute must be strictly followed in all
matters of substance. In such cases, the record must show
affirmatively every material fact, necessary to entitle the
party to this summary remedy.—*Conolly v. Ala. & Tenn. R.
R. Co.*, 29 Ala. 373; *Jones v. Brooks*, 30 Ala. 588; 2 Brickell's
Digest, 464.

The present proceeding is summary, instituted under sec-
tion 930 of the Revised Code. That section provides a rem-
edy against the county treasurer who fails, on demand, "to
pay an allowed claim against the county, when there are
funds in the treasury to pay the same." The motion must
be made "in the name of the party to whom the claim is
payable, his legal representatives, or assigns." All the claims
sought to be collected in this proceeding are payable and
allowed to parties other than Mr. Enloe, and they were

[Enloe v. Reike et al.]

transferred without indorsement, by mere delivery.  Is this an assignment under the statute?

When commercial paper, payable to bearer, is transferred by delivery, both the right of property, and the right to sue, pass thereby to the transferree; and this is frequently called an assignment of such chose in action.  But this has grown up under the usages of commerce, and is scarcely a correct use of the term.  Assignment proper is "a transfer by writing, as distinguished from one by delivery."—Bouvier's Law Dictionary, tit. *Assignment; Andrews v. Carr*, 26 Miss. 577. When employed in the connection here found—"the name of the party to whom the claim is payable, his legal representatives, or assigns"—we think we would do great violence to the language employed, if we held that it means any thing less than a transfer in writing.  The allowed claims against the county are, in no sense, commercial paper; nor even contracts for the payment of money, under section 2523 of the Revised Code.  The judgment of the Circuit Court must be affirmed, on this ground, if no other.

It is said in the argument, that this proceeding was instituted under the act "for the relief of the poor of this State," approved December 15, 1868.—Pamph. Acts, 414.  The motion made, and the notice served, are, as pleadings, alike fatally defective under that statute.  The very humane and liberal provision therein made, is not broad enough to cover all cases of pauperism in each county.  It provides for only two classes: "paupers living on poor farms," and paupers living "at the public charge."  Only bills for support and maintenance of persons coming within one of these classes are "preferred claims."  To assert the preference accorded to such claims, the notice, motion, or complaint filed thereon, should aver that the bills sought to be collected fall within one of the above classes, designating which; or, partly within one, and partly within the other, as the case may be; and the proof, to justify a recovery, must sustain such averment.  Further, if there be no issue formed, and trial by jury, the record must affirm that such proof was made, and such facts found by the court.  In such cases, intendments of matters of substance are not indulged, beyond the recitals of the record.—*Anderson v. Br. Bank Mobile*, 10 Ala. 375; *Bates v. P. & M. Bank*, 8 Por. 99; *Allums v. Hawley*, 8 Ala. 584; *Reid v. P. & M. Bank*, 3 Ala. 712.

Here we might close this opinion; but, inasmuch as the remaining question presented is one of great practical importance, we prefer to decide it.  The question is, does the act "for the relief of the poor of this State" make the bills therein provided for preferred claims over those provided for

in the act "to provide pay for the grand and petit jurors and court of county commissioners of the different counties in this State," approved February 19th, 1867.—Pamph. Acts, 700 ; Rev. Code, § 926, subd. 7*a*. That act makes it the duty of the county treasurers "to set apart, out of the cash revenues of their respective counties, from time to time, a sufficient fund to pay the grand and petit jurors of their respective counties, and the members of the respective courts of county commissioners at the end of their services as such, and also a sufficient sum to furnish their respective counties with stationery." The act "for the relief of the poor," *supra*, is later in date than the act last copied.

The law does not favor the repeal of statutes by implication ; and only declares such repeal, when all efforts at reconciliation have failed. Only when there is a real repugnance in the provisions, does the earlier enactment yield to the later ; and if part of the provisions of an older statute can be given effect to, without violating any of the provisions of the newer one, the repeal by implication is only partial, and *pro tanto*.—2 Brick. Dig. 463, §§ 44, 45; Sedgw. Con. and Stat. Construction, 97 *et seq*. So, a general affirmative statute does not repeal a prior particular statute. *Generalia specialibus non derogant*.—Sedg. on Con. &c., 98, note a.

Applying these rules to the statute before us, we do not think the act of December 15, 1868, repealed section 926, subd. 7*a*, of the Revised Code. Each has an ample field of operation, without trespassing on the domain of the other. The one requires a fund to be set apart from the cash revenues of the county, for purposes specified. This need not necessarily consume the whole fund, but may leave a large fund for general county purposes. The act of 1867 has an ample field, in securing the necessary, indispensable wants of the county, in keeping up its organization, and supplying the means of its civil administration ; wants, nay, necessities, in which the whole people are concerned ; necessities to the very existence of their organized being. We will not suppose, in the absence of a clear expression of the legislative will, that it was their intention to subordinate these most vital wants, even to the claims of the poor, which certainly stand high on the roll of duties the government owes to the citizen. The one is a necessity—the very life-blood of the body politic ; the other, a sacred duty, only a title less binding in its obligations. Over all common debts of the county, the great mass of county liabilities, "bills for the support and maintenance of the paupers" are "preferred claims." This leaves a broad field for the act of December 15th, 1868, to operate upon.

Judgment of the Circuit Court affirmed.