# Mueller *v.* Mueller *et al.*

*Proceedings in Probate Court for Final Settlement of Administration.*

1. *Husband and wife; construction of marriage contract.*—Where a marriage contract provides that the prospective wife shall turn over to the future husband a certain sum of money, and it is expressly agreed therein that the ·husband was to repay to the wife ·the certain sum of money whenever she required it, there is established between them the relation of debtor and creditor, and said contract excludes the marital right of the husband over such money and fixes the wife as owner of said money as her equitable separate estate in a jurisdiction where the common law prevails.

2. *Same; same; contract construed with reference to the domicile of the husband.*—The domicile of the wife follows that of the

[Mueller v. Mueller *et al.*]

husband, and where the prospective wife lives in a different state from that of the future husband, a marriage contract entered into between them, at the residence of the wife, will be construed with reference to the laws of the state of the husband's domicile.

3. *Presumption as to common law.*—In the absence of proof to the contrary, our courts will presume that the common law prevails in Illinois, and in every state having a common origin with our own.

4. *Wife's equitable estate; not affected by change of domicile.* When a wife is possessed of an equitable separate estate in property, which accrued to her while residing in another state, the character of such estate is not changed by the removal of herself and husband to this state, bringing the property with them, and the acquisition of a domicile here.

5. *Widow's distributive snare in husband's estate; statute refers to statutory not to equitable estate.*—The statute requiring that in the computation of the widows' dower and the distributive share in the deceased husband's estate, the value of her separate estate shall be deducted (Code, §§ 1506, 1507), refers to the estate created by the constitution and statutes, forming a statutory separate estate, and not to an equitable separate estate; and, therefore, the widow's equitable separate estate can not be deducted in any event from her distributive share in her husbands estate.

6. *Same; as relating to personal estate.*—Where a married man dies intestate, leaving surviving him his widow but no children or their descendants, the widow is, under the statute (Code, § 1462), entitled to all of the husband's personal estate; and the statute of descent, (Code, § 1453), has no application.

APPEAL from the Probate Court of Mobile.

Heard before the Hon. PRICE WILLIAMS, JR.

John L. Mueller died by committing suicide on April 16, 1897. He left surviving him his widow, Louisa Mueller, but no children or their descendants; and his mother and several sisters also survived him. A. S. Lyons was appointed administrator of his estate. On March 9, 1899, the administrator made application for final settlement and filed his accounts and vouchers therefor. A day was appointed for the final settlement, at which time the widow, Louisa Mueller, appeared and moved the court to decree that she was entitled to

the balance of her deceased husband's estate, which was shown to be in the hands of the administrator after paying the debts of the estate and the costs of administration. The mother and sisters of said John L. Mueller, as next of kin, also appeared and moved the court to deduct from the widow's distributive share in said estate the value of her separate estate, and that if the value of such separate estate exceeded the estate for distribution, that she should take nothing and that the said decedent's estate should be distributed to his mother and sisters as next of kin.

Upon the hearing of these motions, the following facts were disclosed: On April 7, 1888, John L. Mueller and Mrs. Louisa Colinsky entered into a marriage contract in the city of New Orleans, which was the residence of Mrs. Louisa Colinsky, it being recited in said contract that John L. Mueller was a resident citizen of Chicago, Illinois, where it was contemplated the parties should live after marriage. The contract stipulated that in consideration of the marriage about to be solemnized between the parties, they agreed among other things that Mrs. Louisa Colinsky, future wife, was the owner of $2,500 in cash, which she had saved from her earnings for several years, and it was stipulated that in consideration of the contemplated marriage that the said John L. Mueller should take charge of the said $2,500 for the benefit of his future wife, and he bound himself to pay over the said sum unto his wife, whenever she requested him to do so. John L. Mueller died without paying to his wife, Louisa, the $2,500. At the time of his death he carried two insurance policies, in different companies, for $5,000 each. Each of these policies contained the stipulation providing that the same should be void if the insurer died by his own hand. In each of these policies Louisa Mueller was the beneficiary. The policies were compromised and Louisa Mueller received from them, after paying counsel fees and other expenses, $2,107.70. After the death of her husband, Louisa Mueller brought an action against the administrator to recover the $2,500 which she had loaned her husband, as evidenced by the

marriage contract. In this action she recovered a judgment for $2,834.86, which judgment was paid by the administrator. The settlement of the administrator's account shows that he had also paid to Louisa Mueller $1,000 in cash, and that after deducting all the payments of the debts and costs of the administration, there was in the hands of the administrator $4,146.41. It was shown that after the marriage of Louisa Colinsky to John L. Mueller they lived together as husband and wife in Chicago, Ill., and that they subsequently removed to Alabama and resided in Mobile, and were residing there at the time of the death of John L. Mueller. Upon this evidence the court rendered a decree in which he held that Louisa Mueller had a separate estate, which was of the value of $4,707.70, and therefore, that she, as the widow of said decedent was not entitled to and should not have and recover from said administrator any distributive share in said estate, but that the estate of the decedent remaining in the hands of the administrator should be distributed among the mother and sisters of said decedent. To the rendition of this decree the said Louisa Mueller duly excepted, and it is from this decree that the present appeal is prosecuted, and the rendition thereof is assigned as error.

GREGORY L. & H. T. SMITH, for appellant.—No briefs came to the hands of the reporter.

PILLANS, TORREY & HANAW, *contra.*—The term distributee has always been the appropriate description of the person taking by virtue of the statute of distributions, the whole or part of the remnant of intestate's personalty remaining after settling debts, etc.—2 Williams Exrs., 1271; Wœrner Adm., 132.

All of the appellant's estate was separate statutory estate. The domicile was in Alabama. Moreover the wedding was later in date than act of 1887.—*Michael v. Rooney,* 84 Ala. 585; *Gunn v. Hardy,* 107 Ala. 609; Code, 1896, § 2520; *Castleman v. Jeffries,* 60 Ala. 388; *Turner v. Fenner,* 19 Ala. 355. Her separate estate

consisted of the monies entrusted by her, at marriage, to her husband on promise of repayment, evidenced by the marriage contract, and of the two policies of life insurance. The latter were as clearly separate property as the former.—*Williams v. Williams*, 68 Ala. 405; *Wadsworth v. Miller*, 103 Ala. 130. The value of this separate estate is ascertained by its fruits, consisting as it did of choses in action.—*Wiggins v. Newberry*, 72 Ala. 240; *Wadsworth v. Miller*, 103 Ala. 130; *Williams v. Williams*, 68 Ala. 405.

The widow is estopped to now set up the invalidity of the policies, having received, accepted and retained the fruits of them.—Herman Estopp., 461, 463, 465; *Hatchet v. Blanton*, 72 Ala. 423. Total value received from her separate property exclusive of profits exceeded the amount of the balance of the estate for distribution. Hence she took no share.—Code, 1896, § 1506.

TYSON, J.—By the terms of the contract entered into between the appellant and her late husband, before their marriage, it was expressly agreed that he was to repay to her the twenty-five hundred dollars of money belonging to her whenever she required it. It was under this agreement that this money went into the possession of the husband. This antenuptial contract was executed by the husband and wife in the State of Louisiana, which was the domicile of the wife before her marriage. The domicile of the future husband, however, was in the State of Illinois. They were each over the age of twenty-one years, and there is no fact shown by the record impairing their capacity to enter into the contract. It is obvious from the language employed in it, that it was the intention of the parties to exclude the right of the husband by virtue of his marriage, by reducing the money to his possession, to become the owner of it. The purpose evidently was to settle precisely both of their rights with respect to this particular fund. He was to become her debtor and she his creditor—a status which excluded his marital rights and fixed hers as owner of an equitable separate estate in a jurisdiction where the com-

mon law prevails; namely, the State of Illinois. That this was the purpose sought to be effectuated by the contract hardly admits of serious controversy. And especially is this true when we take into consideration the situation of the parties at the time of entering into it. In Louisiana where the civil law prevails, the money remained hers notwithstanding her marriage. 9 Am. & Eng. Ency. Law, 790; Story Eq., § 1367; 1 Barge L., 202. In Illinois, his domicile, where the common law prevails, and in which they contemplated living after the marriage, the money would have become his by reducing it to possession unless she protected her ownership of it by contract. This she had the right to do and did do.—14 Am. & Eng. Encyc. Law, 539; 2 Brick. Dig. 72, § 51, and p. 81, § 164, *et seq.* The domicile of the wife follows that of the husband, and as the contract was made as a marriage contract and with a view to the laws of his domicile, it must be construed with reference to the laws of the State of Illinois.—Stewart on Husband & Wife, § 28 and note 6; also § 29 and notes; *Glenn v. Glenn,* 47 Ala. 204. And there being no evidence in the record of any statute regulating the property of married women in Illinois, we will presume that the common law prevails there.

Was the character of her estate changed by the acquisition of a domicile in this State after marriage? In short, did her equitable separate estate become a statutory estate by reason of their becoming residents of this State? This question was answered in the negative in the case of *Cahalan v. Monroe,* 70 Ala. 271, where it was held that the act of bringing property into this State after the husband's marital rights had attached in South Carolina, under the common law, which was presumed to prevail there, could not operate to change its status or ownership. The case of *Castleman v. Jeffries,* 60 Ala. 380, was there held not to apply. The same answer was given in *Drake v. Glover,* 30 Ala. 382, where it was said: "It is unquestionably the law that whatever title Mrs. Drake may have acquired in Louisiana, while she and her husband

were domiciled in that State, would be unimpaired by the change of the matrimonial domicile and the removal of the property to this State."

In *Doss v. Campbell*, 19 Ala. 590, it was again held, that the laws of the State in which the marriage is celebrated govern the rights of each party to the property of the other, this too without any contract in reference to the ownership of the property, and their subsequent removal to another State only affects property afterwards acquired. Therefore, when the marriage was celebrated in Texas, by the laws of which the husband acquires no interest in his wife's property by marriage, the subsequent removal of the parties with their property to this State does not subject the wife's property to the payment of his debts. To the same effect is *Irwin v. Bailey*, 72 Ala. 467.

It is true that this contract was executed in Louisiana in 1887, subsequent to the passage of the act of February 28, 1887, which repealed preexisting statutes creating and regulating the separate estates of married women and introduced a new system, enlarging the interest of the wife and her capacity to sue and her liability to be sued, and annulled the title of the husband as trustee of his wife, etc. But this statute has no extra-territorial force and cannot have any influence upon the status of the wife as to ownership of property under a contract made in Louisiana with reference to the laws of Illinois. Nor did the bringing of the chose in action owned by the wife as her equitable separate estate into this State any more affect her right to it as an equitable separate estate, than was the status or ownership affected in the cases above quoted from and cited by the general statutes of this State in force at that time. The change of domicile cannot and does not affect her rights which were already vested by virtue of the contract under the laws of her first matrimonial domicile.—Stewart on H. & W., § 32 and note 3.

There is no contention that this contract offends the laws of the *forum* and therefore invalid in this State, notwithstanding it was efficacious and valid in the State of Illinois. Indeed, no such contention could be made

with any show of merit. The husband died without repaying this money which went into his hands under this contract, and the appellant, his widow, recovered a judgment for it against his administrator, which was paid to her out of the assets of his estate. The money so collected, as we have shown, being her equitable separate estate by contract, could not have been deducted in any event from her distributive share in her husband's estate. It is the statutory estate, that the statutes (§§ 1506, 1507) authorize to be deducted from her distributive share.—*Harris v. Harris*, 71 Ala. 536; *Huckabee v. Andrews*, 34 Ala. 646; *Smith v. Smith*, 30 Ala. 642.

It appears that appellant's husband, whose estate is being administered, died without children or their descendants, but leaving several sisters, a mother, and this appellant, his wife. He owned no real estate at the time of his death, and his estate consists of personal property of the value of $4,100. Under subdivision 3 of the statute of descent (§ 1453 of Code), the real estate of persons dying intestate descends, subject to the payment of debts, charges against the estate and the widow's dower, if there are no children or their descendants, and if there be but one surviving parent, then one-half to such surviving parent, and the other half to the brothers and sisters of the intestate or their descendants, in equal parts. Under the provisions of section 1462, the personal estate of persons dying intestate as to such estate, after the payment of debts and charges against the estate, is to be distributed in the same manner as his real estate and according to the same rules; *except that the widow, if there are no children, is entitled to all the personal estate,* or if but one child, she is entitled to one-half; if more than one and not more than four children, to a child's part; and if more than four children to one-fifth. It is plain that as to personalty where there are no children if there is a wife, she takes the entire estate. The exception which he have italicized is in plain and unambiguous language and needs no interpretation or construction. It is an express qualification of the provisions of subdivisions of section 1453, and there is no room for the application of the provisions of the latter,

in the distribution of personal property, where there is any one to take it, under the exception in section 1462. It is also plain, that it was the purpose to provide by the exception the *descent* or rather the distribution of the personalty *only where there is a wife surviving.* If there be no wife, then the descent or rather the distribution would be governed by section 1453.

We are clearly of the opinion that the appellant was entitled to the entire estate. This being true, there is no room for the application of the provisions of section 1506 or 1507. Their provisions are only applicable when the personal estate is to be distributed, parceled out, or divided among those who are entitled to it. The appellant being entitled to the whole, no act of parceling out or dividing can be called into exercise. It would certainly be a work of supererogation, not to say folly, to require the court to ascertain the value of her separate estate and after deducting it from her distributive share, which would be the whole of the personalty after paying debts and charges, pay it over to her; or after the court had ascertained that her separate estate was equal to or exceeded her distributive share, then order the whole estate paid over to her. Nor do the words in section 1506, "she shall be not entitled to dower in or distribution of her husband's estate," in the event the court ascertains her separate estate is equal to or exceeds her distributive share, affect the question. These words cannot be held by any rule of construction to repeal the exception in 1462 which vests absolutely in her the title to the whole where there are no children. And unless the exception is repealed or we engraft upon it by interpolating into the statute a proviso to the effect, that her title shall not be an absolute one, but a conditional one, dependent upon her owning at the time of her husband's death a statutory separate estate, there is no field of operation, in this case, for them. Repeal by implication is not favored and is only declared when there is an irreconcilable repugnancy between two statutes of different dates.—*Enloe v. Ricke,* 56 Ala. 500; 3 Brick. Dig. 750, § 47.

Besides these two sections of the Code cannot be said to be legislative acts of different dates, but are parts of the same system of laws enacted at the same time and must be construed *in pari materia.* Nor are we authorized to interpolate in the statute the proviso, making her title a conditional one, when a construction can be given to the language under consideration which will harmonize the two statutes without doing violence to the provisions of either, and this, too, for the purpose of enabling the sisters of the husband to share with her, to be allotted a distributive share, in order to solely give effect to the plain meaning of the word *distribution* as used in the words quoted; a result which if followed to its logical consequences, in a case where there are no children or their descendants, no father or mother, no brothers or sisters, or their descendants, no next of kin capable of inheriting, would escheat the entire estate to the State—forsooth because the wife happened to own a statutory separate estate equal to or in excess of the value of her *distributive share* in her husband's estate, which she hath not. For the interpolation, in order to effectuate the construction contended for by appellees, would of necessity have to be extended to each of subdivisions 6, 7 and 8 of section 1453 of the Code.

The conclusion of the whole matter, when reduced to its last analysis, is, that it was simply the intention of the legislature to reduce the distributive share of the wife in her husband's estate or to defeat her right thereto, by virtue of her ownership of a statutory separate estate in favor of his child or children and no one else.

The result of our holding eviscerates all apparent repugnancy and gives a field of operation to all the sections of the Code regulating the descent and distribution of property of persons dying intestate; a result eagerly sought to be attained by the courts and in consonance with sound principles or rules of construction.

It is unnecessary to consider the other question relating to the money paid the appellant upon the insurance policies.

The decree of the probate court is reversed and the cause remanded.