# Irwin *v.* Bailey.

### *Bill in Equity for Specific Performance of Contract.*

1. *Specific performance of contract; when decreed.*—A court of equity will not decree the specific execution of a contract, unless it is fair, just, reasonable, and equal in all its parts; it must also be founded on an adequate consideration, and be mutual in its operation and effect; and its specific execution must effectuate the real intention of the parties, and must be free from any hardship or oppression.

2. *Same.*—There is no other class of cases, within the jurisdiction of a court of equity, to which the maxim is more rigidly applied, that he who seeks equity must do equity; and hence, where a specific performance could not be decreed against the party asking it, it will not be decreed in his favor, but the parties will be left to their legal remedies.

3. *Presumption as to common law.*—In the absence of proof to the contrary, our courts will presume that the common law prevails in Pennsylvania, Illinois, or any other State hvaing a common origin with our own.

4. *Renunciation of marital rights by husband.*—At common law, the husband might renounce his marital rights in and to his wife's property; and the effect of such renunciation was, that the property became the equitable estate of the wife, as if he had first reduced it to possession, and then made a gift of it to her.

5. *Wife's equitable estate; how affected by change of domicile.*—When the wife is possessed of an equitable separate estate in property which accrued to her elsewhere, the character of her estate is not changed by the removal of herself and husband to this State, bringing the property with them, and the acquisition of a domicile here; and on her subsequent death intestate, the title and ownership of the property devolve upon her personal representative or heirs at law, to the exclusion of the husband.

6. *Specific performance refused, for want of mutuality; special relief granted by subrogation to discharged mortgage.*—Where a married woman advanced to her father, either as a loan, or in trust to be invested for her benefit in a tract of land, moneys belonging to her as an equitable separate estate, which he used in part payment of the purchase-money for the land, but took the title in his own name; and dissatisfaction being expressed by the daughter and her husband, because the title was so taken, and because there was no written evidence of her interest in the land, or that her money was used in paying for it; thereupon, after the death of the wife and daughter, the father agreed in writing with the surviving husband, "in consideration," as therein recited, "of having given my late daughter certain money, part of which she returned to me at or shortly after I purchased" the lands, to convey a specified part of the lands to the husband, with half of his stock, farming implements, &c., on condition as follows: "he to pay off the mortgage for $3,000 that now stands against the property, and, if judgment is obtained against me in a suit now pending in favor of R. & Co., to pay one-half the amount thereof; he

to lift the mortgage within the present year, and I to make him a deed to the property when is prepared to lift the mortgage; " *held,* on bill filed by the husband after paying the mortgage, that he was not entitled to a specific performance of the contract, since he could not discharge the defendant from liability for the moneys so invested in the lands, and therefore the contract could not be enforced against him; *held,* also, that he was entitled to be subrogated to the rights of the mortgagee, to the extent of the moneys paid by him in satisfaction of the mortgage.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. H. C. SPEAKE, as special referee under the statue approved February 23d, 1881.—Session Acts 1880–81, p. 66.

The bill in this case was filed on the 10th January, 1878, by Samuel A. Bailey, against William C. Irwin; and sought the specific performance of a written contract or agreement signed by the defendant, which was in these words: " Know all men by these presents, that I, William C. Irwin, of Madison county, State of Alabama, in consideration of having *gave* to my late daughter, Mary Bailey, certain *monies,* part of which she returned to me at or shortly after the time I purchased the farm on which I now reside, have agreed to *deed* to Samuel A. Bailey the following tracts of land, they being a part of said farm," particularly describing the lands, which were said to contain 480 acres, " on the following conditions: he, the said Bailey, to pay off the mortgage for $3,000 that now stands a lien against my property, and if judgment is obtained against me in a suit now pending, wherein Rowland & Co. are plaintiffs, he to pay one-half the amount; he to lift the mortgage within the present year, and I to make him a deed for the properties when he is prepared to lift the mortgage, and to give him possession of the properties at the end of the year, or as soon as the crops are gathered and taken off that I may have planted on them the present year. I also agree to give him one-half of my live-stock and farm implements, reserving the mower, rake, huller, two-horse wagon, and cart. Witness my hand and seal, this 12th January, 1877." On final hearing, on pleadings and proof, the special chancellor, or referee, to whose decision the cause was submitted by agreement of record, held that the complainant was entitled to a specific performance as prayed, and rendered a decree to that effect; and his decree is now assigned as error.

WALKER & SHELBY, for the appellant. (No brief on file.)

HUMES, GORDON & SHEFFEY, *contra.*—The grounds of defense set up in the answer are, that the agreement "was procured from respondent, by complainant, under misrepresenta-

[Irwin v. Bailey.]

tions and fraud, and was inequitable and unjust, both to respondent and to complainant's daughter, who is respondent's grand-daughter;" and that said agreement "is exorbitant in its terms, extortionate in its demands, iniquitous, and contrary to good conscience." In other words, the defenses are—1st, inadequacy of consideration; 2d, fraud, misrepresentation, and imposition.　If neither of these defenses is established, the right to a specific performance is not matter of discretion, but of legal right.—*Bogan v. Daughdrill*, 51 Ala. 314.　In determining the adequacy of the consideration, the court must look to the agreement; and in ascertaining the intention of the parties, must consider the nature of the agreement, the condition of the parties executing it, and the objects they had in view.—*Strong v. Gregory*, 19 Ala. 146.　It is not necessary that the consideration should be expressed formally and precisely, if it is so expressed that a person of common sense would understand it. Browne on St. Frauds, § 399.　Where a sufficient legal consideration is expressed, its inadequacy is not a ground for refusing a specific performance of the contract.—*Goodlett v. Hansell*, 66 Ala. 151.　There being no proof of fraud, mistake, or imposition, the court will not inquire into the adequacy of the consideration, but will adopt the estimate of the parties, who were fully competent to transact their own business, and acted with full knowledge of all the facts.　It may be uncertain whether Bailey had such an interest in the property, as could be enforced by him; yet he claimed and asserted such right, and was threatening suit to enforce it; and the compromise and settlement of this claim, by which the trouble, vexation, delay, annoyance, and costs of a law-suit were avoided, was a sufficient consideration to uphold the agreement.　But, on the facts proved, Bailey's marital rights had attached to the bonds and money of his wife, the common law being presumed to prevail in Pennsylvania and Illinois; and his rights were not affected by the change of domicile.—*Castleman v. Jeffries*, 60 Ala. 380; *Drake v. Glover*, 30 Ala. 382; *Doss v. Campbell*, 19 Ala. 50; 1 Bishop's M. W. §§ 602, 605; 2 *Ib.* §§ 565–6; Story's Conflict of Laws, § 558.　The common law favored the husband's marital rights, and required that an intention to exclude them should be clearly manifested.—*Lamb v. Wragg*, 3 Porter, 82; *Johnson v. Johnson*, 32 Ala. 639; *Pollard v. Merrill*, 15 Ala. 173; *Moore v. Jones*, 13 Ala. 303.　Nor were his rights affected by permitting his wife to retain possession.—*Hopper v. McWhorter*, 19 Ala. 229; *Bell v. Bell*, 37 Ala. 541.　Even if the court should hold that Mrs. Bailey had an equitable estate in the land and stock investment in Alabama, yet, on her death intestate, her surviving husband became entitled to a valuable portion of it.—*Marshall v. Gayle*, 58 Ala. 284; *Smoot v. Lecatt*, 1 Stew-

[Irwin v. Bailey.]

art, 602; *Bernstein v. Humes*, 60 Ala. 582. The rights and interests of Helen Bailey, the daughter of the complainant, and grand-daughter of the defendant, are not involved in this suit, and can not be affected by its result; since she is not a party, and the complainant, if entitled to a decree, can acquire no other or greater interest than the defendant has.—*Bogan v. Daughdrill*, 51 Ala. 314; 2 Parsons on Contracts, 382; 2 White & Tudor's L. C. Eq., p. 1144; Fry on Spec. Perf. §§ 299, 300. Finally, the appellee invokes the principle often declared by this court, in revising decrees in chancery, that the chancellor's decree must stand unless it clearly appears to be erroneous. *Lehman Bros. v. McQueen*, 65 Ala. 570; *Rather v. Young*, 56 Ala. 94.

BRICKELL, C. J.—This is a bill for the specific performance of a contract, by which the appellant bound himself (to follow the words of the contract), "in consideration of having *gave* to my late daughter, Mary Bailey, certain moneys, part of which she returned to me, at or shortly after the time I purchased the farm on which I now reside," to convey to the appellee, the husband of said Mary, certain lands, and agreed to give him "one-half my live stock and farm implements, reserving the mower, rake, huller, two-horse wagon and cart," upon the following conditions as expressed in the writing: "he, the said Bailey, to pay off the mortgage for three thousand dollars that now stands against my property, and if judgment is obtained against me in a suit now pending, wherein Rowland & Co. are plaintiffs, he to pay one-half the amount; he to lift the mortgage within the present year, and I to make him a deed for the properties when he is prepared to lift the mortgage," &c.

The material facts are, that in October, 1863, the appellant, then residing in the State of Illinois, conveyed to his daughter and only child, Mary, a tract of land there situate. The deed is an ordinary conveyance of bargain and sale, upon a recited consideration of seven thousand dollars. In April, 1864, the said Mary intermarried with the appellee, and thereafter she, with the appellant and appellee, resided in Illinos until the latter part of 1865, when a sale of said lands was made for ten thousand dellars, and the parties removed to Philadelphia. The proceeds of the sale of the lands were invested in United States bonds, which were placed in the exclusive possession of Mrs. Bailey, and which she and the appellee recognized and treated as her sole property, he not asserting any claim thereto. In February, 1866, the appellant purchased a tract of land situate in the county of Madison, in this State, of which the lands now in controversy form a part, for the sum of thirteen thousand dollars; of which, three thousand dollars was paid in

cash; four thousand eight hundred and fifty dollars was paid March 1st, 1866, and the remainder, with interest, was payable two years thereafter. In making the two first payments, and in paying for the purchases of stock and farming utensils to be used in cultivating the lands, the appellant obtained from Mrs. Bailey the sum of sixty-seven hundred dollars, which she derived from a sale of the United States bonds. Soon thereafter Mrs. Bailey removed from Philadelphia; and from thence she and the appellee resided with the appellant on said lands, until her death in 1873. She died intestate, leaving surviving her an only child. In 1869, the appellant made final payment of the purchase-money of the lands, and received a conveyance, borrowing about three thousand dollars to make the payment, and executing a mortgage on the lands to secure the payment. There was with Mrs. Bailey and the appellee much dissatisfaction, because the conveyance of the lands was taken in the name of the appellant, and because there was no writing disclosing that she had an interest in the lands and other property, or that money of hers had been used in paying the purchase-money. The principal object of the contract now sought to be enforced, was the quieting and silencing all further controversy in reference to this matter. After having been notified by the appellant that he would refuse to carry the contract into execution, the appellee paid the mortgage debt referred to in the contract, and satisfaction of the mortgage was entered upon the record. The mortgage was then surrendered to the appellant, and received by him, because the mortgagee was unwilling to deliver it to any one else. The suit in favor of Rowland & Co. was pending and undetermined when the bill was filed, and at the hearing of the cause. The evidence as to the value of the property agreed to be conveyed, is conflicting, the witnesses differing in their estimates. The weight of the evidence shows, we think, that it was not of less value than six thousand dollars. The chancellor decreed a specific performance of the contract, and from the decree this appeal is taken.

The principles upon which a court of equity exercises its peculiar jurisdiction to enforce the specific performance of contracts are well known, and have been of frequent consideration and application in the past decisions of this court. The court will not intervene, unless the contract is fair, just, reasonable, and equal in all its terms and parts; is founded upon an adequate consideration, and its specific execution is free from hardship and oppression. If, on either of these points, there be a well founded objection, the court abstains from interference, leaving the party complaining of a violation of the contract to the remedies afforded him in courts of law. In the exercise of the jurisdiction, the court is invested with a discretion; not ar-

bitrary or capricious, but a sound, judicial discretion, moulding and tempering its action, or the refusal to act, in view of the circumstances of the particular case, and from them determining whether the conscience of the party charged with a violation of the contract is so affected, that moral and equitable duty compel him to a strict performance, rather than to a payment of such damages as a court of law would award against him. A primary duty of the court is to examine the contract, not merely as a court of law would examine it, to ascertain what the parties have in terms expressed, but what in truth was the real intention of the parties, and to carry that intention into effect; or, if it can not be carried into effect, to leave the parties to their legal remedies.—*Hipwell v. Knight*, 1 Y. & C. Exch. 411. There is no class of cases, to which the jurisdiction of a court of equity extends, that the maxim "he who seeks equity must do equity," is more rigidly applied. Hence it results, that the contract or agreement which the court is asked to enforce specifically must not only be certain, fair, just, reasonable, and equal in all its parts and terms, must not be merely voluntary, but founded upon a valuable and adequate consideration; and it must be mutual in its operation and effect. As is said by Prof. Pomeroy, "The contract must be of such a nature that both a right arises from its terms, in favor of either party against the other, while the corresponding obligation rests upon each towards the other; and also that either party is entitled to the equitable remedy of a specific execution of such obligation, against the other contracting party."—Pomeroy on Contracts, § 162. Or, as is said in another work: "A contract, to be specifically enforced by the court, must be mutual—that is to say, such that it might, at the time it was entered into, have been enforced by either of the parties, against the other of them. Whenever, therefore, whether from personal incapacity, the nature of the contract, or any other cause, the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other, though its execution in the latter way might in itself be free from the difficulty attending the execution in the former."—Fry on Specific Performance, § 286. "I have no conception," said Lord Redesdale, in *Lawrence v. Butler* (1 Sch. & Lef. 13), "that a court of equity will decree a specific performance, except when both parties had a right by the agreement to compel a specific performance, according to the advantage which might be supposed to have been derived from it." Were it otherwise, a specific performance might be decreed, when, if it was disadvantageous to the party complaining, he could not, at the instance of the other party, be compelled to perform.

There are some cases, in which a want of mutuality in the

[Irwin v. Bailey.]

contract, at the time it was entered into, is not regarded as an insuperable obstacle to specific performance; these rest upon their own peculiar circumstances and facts. Performance by the one party, and its acceptance by the other, may entitle the party performing to the assistance of the court, though he could not have been compelled to perform. The contract of an infant is voidable; but, after the arriving at age, he may affirm and enforce it, notwithstanding the original want of mutuality. The class of cases to which we refer are exceptions to the general principle, and involve considerations which justify the court in the specific performance of the contract. But, when the contract, in its nature and character, and according to the intention of the parties, involves and imposes a reciprocity of obligation and duty, there is no authority for enforcing specific performance of it, in favor of a party, who, on his part, has not performed, can not be compelled to perform, and is not capable of performing.—*Cooper v. Pena*, 21 Cal. 404. He has not done, and can not do equity, and is not in a situation to invoke the aid of the court. Applying this principle to the facts of this case, leads necessarily to the conclusion that specific performance of the contract can not be decreed.

The main inducement to the contract, the controlling purpose of the parties, was the settlement and adjustment of the rights accruing to Mrs. Bailey, because of the moneys of hers which had been employed in making payments for the lands, and for the stock and farming implements purchased to cultivate them; and to relieve the appellant from all corresponding liability. This is apparent from the words of the written agreement, when these are read in connection with all the facts and circumstances. The consideration it recites is certain moneys the appellant had given to his daughter, a part of which she returned to him, at or shortly after he purchased the lands. Upon this consideration, he agrees to convey the property on the performance of certain conditions by Bailey; and these conditions are the payment of the mortgage debt, and one-half of the judgment which might be obtained in the suit of Rowland & Co. There was no sale of the property intended, for the sums necessary to pay these demands, which were not a fair equivalent for the property; in no just sense did these sums constitute the price, or purchase-money of the property. The quieting and silencing all future and past controversy growing out of the use of the money of Mrs. Bailey, was the material element of consideration, and the real, controlling intention of the parties. It is not necessary to examine the evidence, proceeding largely from the immediate parties, embarrassed in irreconcilable conflict (which, it is hoped, results rather from an honest misunderstanding or misinterpretation of facts, than from intentional, deliberate misrepresenta-

tion), and determine whether the moneys were loaned to the
appellant, or contributed or advanced as a definite share of the
purchase-money of the property, with the intention that in the
property Mrs. Bailey should have a corresponding interest.   If
there was a loan, the purpose was its payment; or, if there was
a trust created in, and attaching to the property, the purpose
was its extinguishment; in the one aspect, acquitting and dis-
charging the appellant from all personal liability; in the other,
relieving the property he reserved from the operation of the
trust.   The tie or obligation of the contract, to which the ap-
pellant is subjected, is the conveyance of the property upon be-
ing discharged and acquitted of all personal liability for the
loan; or, if it was not a loan, upon an extinguishment of the
trust, if any was created, and upon the payment of the mort-
gage debt.   The tie or obligation to which the appellee was
subject, was the satisfaction of the loan, or the extinguishment
of the trust, and the payment of the mortgage debt and one-half
of the judgment Rowland & Co. might obtain.   The tie or
obligation was reciprocal, or the contract is wanting in mutual-
ity, in fairness and justice; for no contract can be deemed fair
and just, that is not reciprocal in its obligation and duties—that
does not yield to each party the rights or benefits it is intended
to confer.

If there were statutes in Illinois, or in Pennsylvania, when
Mrs. Bailey and her husband were domiciled in those States,
which operated a change of the common law as to the condi-
tion of the property of the wife, or of the marital rights of the
husband, of them there is not in the record pleading or evi-
dence.   The presumption is, therefore, that the common law
prevailed in each of those States.   That presumption is in-
dulged in reference to all sister States having a common origin
with our own, until the contrary is shown by pleading and proof.
The lands in Illinois not having been conveyed to the sole and
separate use of Mrs. Bailey, by the marriage, at common law,
the husband became seized thereof, entitling him to take the
rents and profits during the joint lives of himself and wife, and
by possibility during his own life, if he was the survivor.   When,
by sale, and by the conveyance of husband and wife, the lands
were converted into money, if, without any particular agree-
ment, the wife had permitted the money, which, in the language
of *Sessions v. Sessions* (33 Ala. 522), was *new property*, to pass
into the possession of the husband, the money, like any other
personal property of the wife's when reduced to possession,
would have become his property.—1 Bish. Mar. Women, § 605.
But the money never passed into his possession; over it he
claimed or exercised no control whatever.   The evidence shows,
very clearly, that intentionally Bailey abstained from exercising

[Irwin v. Bailey.]

or claiming any dominion whatever over the money received from the sale of the lands, or of the United States bonds, in which it was subsequently invested; that he elected his wife should hold and treat it as her own. Not only was there by his conduct a renunciation of all ownership and dominion, and a recognition of the sole and exclusive ownership and dominion of the wife, but, according to his evidence, he gave to her United States bonds, of near the value of three thousand dollars, derived from a sale of his own personal property, made at the same time of the sale of the lands, and to the same purchaser.

While, at common law, the husband could, by a reduction to possession of the personal property of the wife, convert it into his own absolutely; or, if it was in the possession of the wife, her possession became, and was in contemplation of law, his possession; yet, he was not compelled to an assertion of his marital rights. The personal property of the wife, in her possession at the time of the marriage, or possession of which she subsequently acquired, he could refuse to take and hold; or, taking and holding it, he could elect to take and hold it as her trustee. Or, if the property was *choses* in action, he could refuse to exercise his marital right and power of making them his own, by a reduction of them to possession. In either of these events, the property remained unaltered—the property of the wife, passing to her personal representative.—*Jennings v. Blocker*, 25 Ala. 415; *Gillespie v. Burleson*, 28 Ala. 551; *Machen v. Machen*, 38 Ala. 364. Such was as necessarily and essentially the result, as if, after reducing the property to possession, converting it into his own, the husband had made a gift of it to the wife, which was construed as a gift to her sole and separate use.— *Williams v. Maull*, 20 Ala. 721; *Mc Williams v. Ramsey*, 23 Ala. 816. Upon the United States bonds, and upon the money derived from their sale, by the law of the domicile of husband and wife, was impressed the separate ownership of the wife; and the ownership was unchanged by their subsequent removal to, and acquisition of a domicile in this State.—*Doss v. Campbell*, 19 Ala. 590; *Drake v. Glover*, 30 Ala. 382.

The wife having died intestate, if the money was loaned to the appellant, the exclusive right to recover or receive payment of it would pass to her personal representative. If there was a trust created in and to the lands, it would devolve by descent on her child, her only heir at law. The moneys being the separate estate of the wife, and not of her statutory separate estate, Bailey, as husband, had no interest in them; he was not a distributee of the personal estate of the wife, nor in any sense her heir at law. The obligation of the contract to which he is subject, he can not therefore perform; a decree compelling him to

performance would compel him to do an act which he is without legal capacity to do.    And if the appellant were compelled to performance, he would be deprived of the property for but little more than half of its real value, would not be freed from personal liability for the money, if it was a loan; or, if not a loan, and a trust was created, the trust would remain unextinguished, attaching to and incumbering the property he reserved. Under these circumstances, the court can but see that it would not really do that complete justice which it aims at, and which is the foundation of its jurisdiction to decree specific performance.—*Harnett v. Yielding*, 2 Sch. & Léf. 548.

· "Ordinarily, when a bill is filed for specific performance, and it is dismissed, nothing more is settled by the decree, than that the case is one in which equity will not interpose its extraordinary powers.    But there are cases in which the decree may deny a specific performance, and also give relief, or great injustice would be the consequence."—*Mialhi v. Lassabe*, 4 Ala. 712. A case of this kind occurs, when the purchaser of lands has been let into possession, and has made valuable improvements. There may be well grounded objections to a decree of specific performance, and yet, in such case, his bill would be retained, and a decree rendered giving to him just compensation for the improvements.    Or, he may have paid part of the purchase-money, and fail to make a case entitling him to specific performance; yet, if he has not a full and adequate remedy at law, the bill will be retained, and a decree rendered for the money paid.—*Aday v. Echols*, 18 Ala. 353.    In this case, it is but just and equitable that the appellee should be subrogated to the security of the mortgage, which by payment he removed as an incumbrance upon the property.    In a court of law, the subrogation would not be decreed; it is only in a court of equity it can be obtained.

The decree of the chancellor must be reversed, and a decree here rendered in conformity to this opinion.

