COTTON GROWERS CO-OPERATIVE ASSOCIATION v. W. W. BULLOCK.

(Filed 24 March, 1926.)

**Contracts—Cooperative Marketing—Breach—Liens—Agriculture—Damages—Liquidated Damages.**

Under the provisions of the Cotton Growers Cooperative contract requiring that those signing the same deliver all of their crops to the association to be sold, etc., and stipulating their payment of five cents per pound as liquidated damages for their breach of this contract: *Held*, such growers may not sell their cotton in the open market upon the demands of lienors thereon, furnishing money, etc., to make the crop, without subjecting themselves to the payment of the liquidated damages specified, though the cotton at the price then obtainable was insufficient to pay off the valid and subsisting liens created after the time of the execution of the contract.

CONNOR, J., not sitting.

APPEAL by defendant from *Cranmer, J.,* at November Term, 1925, of EDGECOMBE.

The plaintiff is a coöperative marketing association, of which the defendant is a member. Laws 1921, ch. 87. On 26 February, 1921, the defendant executed and delivered to the plaintiff a marketing agreement containing the following sections:

2. The association agrees to buy and the grower agrees to sell and deliver to the association all of the cotton produced or acquired by or for him in North Carolina during the years 1922, 1923, 1924, 1925 and 1926.

4 a. All cotton shall be delivered at the earliest reasonable time after picking or ginning, to the order of the association, at the warehouse controlled by the association, or at the nearest public warehouse, if the association controls no warehouse in that immediate district; or by shipment as directed, to the association and by delivery of the endorsed warehouse receipts or bill of lading properly directed.

11. The grower shall have the right to stop growing cotton and to grow anything else at any time at his free discretion; but if he produces any cotton during the term hereof, it shall all be included under the terms of this agreement and must be sold only to the association.

12. Nothing in this agreement shall be interpreted as compelling the grower to deliver any specified quantity of cotton per year; but he shall deliver all the cotton produced or acquired by or for him as landlord or lessor.

13 a. This agreement shall be binding upon the grower as long as he produces cotton directly or indirectly, or has the legal right to exercise control of any commercial cotton or any interest therein during the terms of this contract.

13 c. If the grower places a crop mortgage upon any of his crops during the term hereof, the association shall have the right to take delivery of his cotton and to pay off all or part of the crop mortgage for the account of the grower and to charge same against him individually. The grower shall notify the association prior to making any crop mortgage, and the association will advise the grower in any such transactions.

18 a. Inasmuch as the remedy at law would be inadequate, and inasmuch as it is now and ever will be impracticable and extremely difficult to determine the actual damage resulting to the association, should the grower fail so to sell and deliver all of his cotton, the grower hereby agrees to pay to the association for all cotton delivered, sold, consigned, withheld or marketed by or for him, other than in accordance with the terms hereof, the sum of 5 cents a pound, as liquidated damages for the breach of this contract, all parties agreeing that this contract is one

30—191

of a series dependent for its true value upon the adherence of each and all of the growers to each and all of the said contracts.

The defendant did not deliver to the plaintiff any part of cotton he raised in 1922 and 1923, and in October, 1923, the plaintiff brought this suit to recover liquidated damages for the cotton sold by the defendant and to enjoin any other similar disposition during the continuance of the marketing agreement.

The issues were answered as follows:

1. How many pounds of cotton, of the crop of 1922, did defendant fail to deliver to plaintiff in breach of his contract? Answer: 11,925 pounds.

2. How many pounds of cotton, of the crop of 1923, did defendant fail to deliver to plaintiff in breach of his contract? Answer: 3,375 pounds.

Judgment was given against the defendant for $765 as liquidated damages, $150 as attorneys fees and $25 to cover the initial and two renewal premiums on the injunction bond, with interest on these amounts until paid. The defendant excepted and appealed.

*Battle & Winslow, Burgess & Joyner and Henry C. Bourne for plaintiff.*

*Spruill & Spruill for defendant.*

ADAMS, J. When the defendant became a member of the coöperative association he owned two farms, the Lawrence Farm and the Hales Place, on each of which he cultivated cotton in 1922; but in 1923 only on the latter. In 1922 he sold on the open market 11,925 pounds of cotton and 3,375 pounds in 1923. This was admitted; whereupon the defendant, called as a witness in his own behalf, proposed to relate the conditions under which the cotton had been sold. If he had been permitted to do so, he would have said in effect that in 1922 and 1923 he found it necessary to borrow money to make his crops; that crop liens were demanded as security for the loans and were executed by him in good faith solely as such security; that in due time the lienors (Planters Oil & Fertilizer Company in 1922 and First National Bank of Tarboro in 1923) demanded that the defendant sell his crops on the open market and pay the proceeds to them; that he did so; that he applied the proceeds in strict compliance with the demand of the lienors; and that the amount derived from the sales was insufficient to pay the respective liens. Upon objection this testimony was excluded, as were the crop liens, which also were offered in evidence, and the defendant excepted.

The validity of the marketing act and of the marketing agreement has heretofore been declared (*Coöp. Asso. v. Jones,* 185 N. C., 265); and in several cases the equitable jurisdiction of the courts has been exercised to prevent the grower from disposing of his crop in breach of his agreement. In others we have recognized the right of a member of the asso-

ciation to execute a mortgage or agricultural lien on his crop for the current year to enable him to cultivate and produce the crop for which the advances were made; and in one or two cases we have held that an order enjoining the grower's wrongful disposition of the crop should be drawn without prejudice to the right of the mortgagee or lien holder to demand and receive of the defendant the mortgaged property or a sufficient part of it to satisfy his claim. *Coöp. Asso. v. Patterson,* 187 N. C., 252; *Coöp. Asso. v. Harvey,* 189 N. C., 494. But we have never gone to the extent of holding that upon the lienor's demand a member may sell his crop on the open market without the knowledge or consent of the association. In our decisions the marketing agreement has not been given the effect of a right to forbid the lienholder to demand and receive of the mortgagor for the purpose of a sale so much of the mortgaged crop as may be necessary to pay the secured debt; for if the grower should refuse such delivery the mortgagee or lienor could enforce it by an appropriate proceeding. *Coöp. Asso. v. Patterson, supra.* But a sale by the grower upon the open market presents a very different question.

Under the terms of section 18 a, *supra,* the defendant agreed to pay to the plaintiff for all cotton delivered, sold, consigned, withheld, or marketed by or for him, unless in accordance with the agreement, the sum of five cents a pound as liquidated damages for his breach of the contract; and the question for decision is whether the defendant's proposed but excluded proof is sufficient, if accepted by the jury, to relieve him of liability for such liquidated damages.

In our opinion it is not sufficient for this purpose. The defendant definitely agreed to deliver to the association all the cotton produced or acquired by him during the years named in his contract (Agreement, sec. 2); he agreed that all his cotton should be delivered to the order of the plaintiff, at its warehouse, at the earliest reasonable time after picking or ginning (section 4 a); and that his cotton should be sold only to the plaintiff (section 11). The primary purpose running through the entire agreement is to secure the delivery of the whole cotton crop to the plaintiff; the one exception being that the words "all cotton" shall not include such as may have been covered by a crop mortgage or contract existing at the time the defendant signed the marketing agreement. Section 3. When the defendant in plain breach of his express agreement, without the approval, consent, or knowledge of the plaintiff, exposed his cotton to sale in the open market he became liable for the liquidated damages prescribed in section 18 a. In the *Patterson* and *Harvey* cases the terms of the marketing agreement were relaxed to the extent of giving force and effect to the statutes relating to mortgages and agricultural liens given for advances and supplies with which to make the crop;

but in the payment of these liens a strict observance of the legal requirements is essential to the maintenance of the contract between the association and its members. The defendant evidently went beyond these requirements. The fact that there was no surplus after the liens were paid does not affect the principle. If a member of the association is permitted to sell on the market when there is no surplus, he may sell when there is a surplus; and then the door to unfair dealing is thrown wide open. We think the cases decided in other courts are all practically to this effect. *Wheat Growers Association v. Loehr,* 234 Pac. (Kan.), 962. See, also, cases cited in *Tobacco Asso. v. Harvey, supra.*

This construction of the marketing agreement does not curtail or in any way restrict the lienor's right to enforce payment of his claim; but it does prevent the mortgagor from abrogating his contract with the association by selling his crop on the open market. When he has contracted that he will not dispose of his crop in this manner, he should regard it no hardship if he is required to abide by the written word. If we should uphold the contention that the defendant had a legal right to sell his entire crop on the open market, though at the demand of the lien holder, the effect would be the practical nullification of the marketing agreement.

The plaintiff was organized as a nonprofit coöperative association for the purpose of marketing cotton and removing or diminishing the danger of a speculative control of the price at which cotton should be sold in the market; and, as said in *Coöp. Association v. Jones, supra,* the plaintiff's existence is dependent on the enforcement of the contract made with its members. If by any kind of indirection the contract may be disregarded the business of the association will come to an end. We find

No error.

CONNOR, J., not sitting.