(110 So. 711)

## BISHOP v. ALABAMA FARM BUREAU COTTON ASS'N. (6 Div. 543.)

(Supreme Court of Alabama. Dec. 2, 1926. Rehearing Denied Jan. 6, 1927.)

**1. Contracts ⊕⟿116(1)—Contract between cotton grower and association held not invalid as in restraint of trade (Acts Sp. Sess. 1921, p. 38).**

Contract between cotton grower and cotton association, framed under Acts Sp. Sess. 1921, p. 38, *held* not invalid as in restraint of trade. (Per Anderson, C. J., and Sayre and Somerville, JJ.)

**2. Contracts ⊕⟿10(1)—Contract between cotton grower and association held not ineffective for want of mutuality of remedy (Acts Sp. Sess. 1921, p. 38).**

Contract between cotton grower and association, framed under Acts Sp. Sess. 1921, p. 38, entitling association to injunction against threatened breach and to decree of specific performance, *held* not ineffective for want of mutuality of remedy. (Per Anderson, C. J., and Sayre and Somerville, JJ.)

**3. Specific performance ⊕⟿12 — Specific performance will be refused when it will prejudice rights of third persons.**

Remedy of specific performance, as a rule, will be refused when it will prejudice the rights of third persons. (Per Anderson, C. J., and Sayre and Somerville, JJ.)

**4. Fraudulent conveyances ⊕⟿27 — Mortgage of cotton crop held not mere sham to defeat grower's contract with association.**

Cotton grower's mortgage of crop, under evidence, *held* not mere sham to defeat grower's contract with association. (Per Anderson, C. J., and Sayre and Somerville, JJ.)

**5. Specific performance ⊕⟿106(4)—Validity of mortgage of cotton crop held not determinable, in association's action for specific performance against grower, in absence of mortgagees.**

In cotton association's action against grower for specific performance of contract, validity of mortgage of crop *held* not properly before court, in absence of mortgagees. (Per Anderson, C. J., and Sayre and Somerville, JJ.)

**6. Specific performance ⊕⟿8—Specific performance is discretionary remedy, directed and regulated by definite rules.**

Specific performance is a remedy resting largely in judicial discretion, directed and regulated by definite rules. (Per Anderson, C. J., and Sayre and Somerville, JJ.)

**7. Specific performance ⊕⟿68—Cotton association held not entitled to decree of specific performance of grower's contract to sell cotton to it.**

Cotton association *held* not entitled to injunction and decree of specific performance of contract of grower to sell cotton to it.

Gardner, J., dissenting.

Appeal from Circuit Court, Marion County; R. L. Blanton, Judge.

Bill in equity by the Alabama Farm Bureau Cotton Association against Joe B. Bishop. Decree for complainant, and defendant appeals. Reversed and remanded.

C. E. Mitchell, of Hamilton, and Williams & Chenault, of Russellville, for appellant.

Counsel argue for error in the decree, and that the case of Warren v. Ala. Farm Bureau Cotton Association, 213 Ala. 61, 104 So. 264, should be overruled, citing Ex parte Baldwin County Producers' Corp., 203 Ala. 345, 83 So. 69; Fidelity & Dep. Co. v. Richeson, 213 Ala. 461, 105 So. 193.

Steiner, Crum & Weil, of Montgomery, and E. B. Fite, of Hamilton, for appellee.

The contract is valid; having been expressly authorized by statute, it cannot be said to be contrary to public policy. Warren v. Ala. Farm Bureau Cot. Ass'n, 213 Ala. 61, 104 So. 264; Denson v. Ala. F. & I. Co., 198 Ala. 391, 73 So. 525; Code 1923, art. 20, c. 274. The rights of defendant's mortgagees are inferior to the rights of complainant under the contract. Kans. Wheat Growers' Ass'n v. Ast, 118 Kan. 247, 234 P. 963; Kans. Wheat Growers' Ass'n v. Floyd, 116 Kan. 522, 227 P. 336; Feagain v. Dark Tobacco Growers' Ass'n, 202 Ky. 801, 261 S. W. 607. Decree for complainant was properly rendered. Tobacco Growers' Co-op. Ass'n v. Jones, 185 N. C. 265, 117 S. E. 174, 33 A. L. R. 231; Brown v. Staple Cotton Co-op. Ass'n, 132 Miss. 859, 96 So. 849; Arnold v. Jones Cot. Co., 152 Ala. 501, 44 So. 662, 12 L. R. A. (N. S.) 150.

SAYRE, J. Bishop became a member of the Cotton Association, appellee, in May, 1922. His contract in writing, framed in substantial agreement with the act of October 29, 1921 (Acts Sp. Sess. p. 38 et seq.), bound him to deliver to the Cotton Association, incorporated under the act, all cotton raised by him during the next five years. In 1924, under circumstances to be stated, he failed to deliver his cotton (13 bales), whereupon the association filed the bill in this cause seeking a decree to enforce the specific performance of his contract by Bishop and, incidentally, to enjoin a disposition of the cotton, pending final decree. In the circuit court, sitting as a court of equity, defendant's demurrer to the bill and his motion to dissolve the injunction were both ruled against him, and on final hearing a decree for specific performance was entered. Defendant appeals.

[1, 2] The validity of the contract, as against the objection that it is in the unlawful restraint of trade, was considered in Warren v. Alabama Farm Bureau Cotton Associa-

---

⊕⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tion, 213 Ala. 61, 104 So. 264. We find no compelling reason why the question determined in that case should be reopened. In the same case, it was held that the contract is mutual in its operation and in its benefits. As for mutuality of remedy, the act provides that the association shall be entitled to an injunction to prevent threatened breaches of the contract and to a decree of specific performance. Whatever may be thought of the wisdom of this departure from the long-established law and practice of the courts in such matters, we think there can be no serious objection to the constitutional validity of this exercise of legislative power. Tobacco Growers' Co-operative Ass'n v. Jones, 185 N. C. 265, 117 S. E. 174, 33 A. L. R. 231, note beginning on page 247.

[3] The act had effect only to relieve appellee's bill of the objection that bales of cotton may be purchased in the open market, and hence that specific performance of contracts for the delivery of cotton would, in the usual course of equity, be denied. It must be construed as contemplating the use of such remedies only in case they shall be found to consist with commonly accepted principles of right and justice, and defendant insists that the necessity of dealing with the rights of mortgagees should be reason enough for denying the remedy of specific performance, for the rule is that this remedy will be refused when it will prejudice the rights of third persons.

The contract between the parties did not deny to appellant the right to place a mortgage upon the cotton he might raise during the year. Without intending to be suggestively specific in that regard, it still recognized the right. The creation of such liens is frequently necessary, no doubt, to enable the cotton grower to procure funds to carry on his farming operations and to supply his own needs during the season of growth and harvest. And, since the association was not in the business of making loans, sound policy would not deny the grower the right to incumber his growing crop for such necessary purposes—this, though it be assumed that he may, subject to prior liens, dispose of that right by contract more closely affecting title than does the contract here in question.

Nor is any far vision needed to see that, if the right of members to raise money by mortgaging their crops were denied, the power of the association to recruit members would be seriously impaired.

[4, 5] The validity of the mortgage in the present case cannot be properly denied on the evidence in the record. It is clear enough that appellant was dissatisfied with his contract of membership in the association. His complaint was that in the preceding year the association was so slow in realizing upon his cotton that he got no returns from it until planting time of the succeeding year, and that, early in 1924, it became necessary for him to make a mortgage in order to procure funds with which to improve his place, for sustenance, and for the cultivation of his crop. It appeared also that, in the beginning, appellant became a member of the association with great reluctance and after much importunity by its agents. Now, the argument seems, in substance, to be that from his general dissatisfaction with the operation of the association, his impatience with the burdens of his membership, his admission that "he did not want to pool his cotton for the year 1924," the fact that he got the money from the bank on the indorsement of some of his relatives by blood or marriage, more or less remote, to secure whom he made the mortgage in question, and that it was recorded on the day of the filing of the bill in this cause—from these facts, it is urged, the inference should be drawn that the mortgage was a mere sham, and that the stated facts afforded safe ground for proceeding to a decree disposing of appellant's rights in the cotton without the presence of the mortgagees. Appellant, on his part, deposed that the mortgage in question had been executed on November 29, 1924, and filed for record on December 1, 1924, the day on which this bill was filed; the intervening day falling on Sunday, that the money so procured had been used to satisfy a mortgage of date March 1, 1924, which, in its turn, secured money borrowed and expended in buildings and otherwise improving the farm then recently purchased by appellant, in supplying his necessities, and in cultivating his crop for the current year, as stated above, and that, before he became a member of the association, he had informed its agent of his purpose to make a mortgage with that end in view and had been informed, in substance, that his membership in the association would not interfere with his plans. The agent in question admitted that appellant had told him that he expected to build a house, and that he (the agent) stated to defendant that he was trying to help him, whereupon defendant signed the contract of membership. This agent denied, however, that he had represented to defendant that he would not be required to deliver his cotton. If the mortgagees were in court and the validity of their mortgage were at issue, we would not, on this evidence, hold the mortgage to be a sham. But, of course, that question cannot be litigated in the absence of the mortgagees.

But the mortgagees were not in court. In the record there is a sworn petition in their behalf, averring that defendant would be unable to meet his note at the bank, on which mortgagees were sureties and to secure whom the mortgage was given, and praying that the cotton be delivered to them to be sold, under the power in the mortgage.

The court does not appear to have taken cognizance of the petition. We must assume that it was not called to the court's attention. The suggestion now on behalf of the appellee association is that; the mortgagees not being parties to the record, it is not for appellant to assert the mortgage to defeat relief. Conceding the validity of the mortgage, for the argument only, appellee by its argument assigns to appellee the status and right of a second mortgagee prosecuting an action of detinue for the mortgaged property. But the fact is that appellee has no title; it has only a contract for the delivery—as it turns out—of 13 bales of cotton, and its right to relief is based, not upon title, but upon an alleged breach or threatened breach of its contract.

Again, it is said that the rights of the mortgagees are in no wise impaired or affected by the decree, that by the contract the association has the right "to take delivery of appellant's cotton and pay off all or any part of the crop mortgage for the account of the grower, and to charge the same against him individually." Appellant objects now that he did not bargain for a guardianship of his private business, and in Tobacco Association v. Patterson, 187 N. C. 256, 121 S. E. 631, a similar case, the court said:

"This injunction, however, should be drawn without prejudice to the rights of the mortgagee or lienholder to demand and receive of defendant, or to enforce delivery by any appropriate procedure, of a sufficient amount of the tobacco [in that case] or other property included in his mortgage, to satisfy his claims to the extent that the same constitute a valid lien superior to the rights and interests of plaintiff under its contract. If such a lien and the amount and extent of it cannot be agreed upon and adjusted, it would seem that the lien claimant should become or be made a party of record, that authoritative and final disposition should be made of the matter."

Nothing of this was done in this case. In this connection, it may not be irrelevant to note that, if appellant's cotton crop should be turned over to the association for administration and the mortgage debt is paid, there will be little or nothing left through which the association may work out its benevolent plans for the relief of cotton growers in general. That was the situation at the time of the decree; at this time it holds out even smaller promise to either of the parties to this cause.

[6] Specific performance is a discretionary remedy; that is to say, it rests largely in judicial discretion, directed and regulated by definite rules. One such general rule is that specific performance will not be decreed when it may work hardship or injuries to a third party. Carlisle v. Carlisle, 77 Ala. 339; 5 Pom. Eq. Jur. § 2216. The mortgagees were not parties to the contract between appellant and appellee, and since, as has appeared, appellant had the right to mortgage his crop, notice to the mortgagees of the contract did not in the least affect their right to the security which they took. Moreover, the equitable relations between them and the parties to this cause are not affected because, so far as the evidence goes, they had no notice of the contract. No decree to which they are not parties should undertake to make a disposal of the property which might embarrass them in the assertion of their rights by driving them to a lawsuit, or, in the alternative, requiring them to submit the settlement of their claims to a negotiation with an adversary claimant, as the association appears to be in this case. The case for specific performance in this aspect rests, not upon the question of inconvenience to appellant, but upon the consideration that the discretionary remedy will not be enforced to the injury of third parties.

[7] Furthermore, the contract of membership provides that:

"Should the grower fail to sell and deliver all of his cotton, the grower hereby agrees to pay the association for all cotton delivered, sold, consigned, withheld, or marketed by or for him, other than in accordance with the terms hereof, the sum of five cents per pound, middling basis, as liquidated damages for the breach of this contract."

That is a hard contract for appellant in his circumstances, and, in view of the inequities affecting the specific performance of the contract, the court is of the opinion that appellee should have been remitted to its remedy by way of an action at law for damages, as provided by the contract, for what it may be worth. Tombigbee Valley R. R. Co. v. Fairford Lbr. Co., 155 Ala. 575, 47 So. 88; Irwin v. Bailey, 72 Ala. 467.

Brickell, C. J., in the case of Irwin v. Bailey, 72 Ala. 467, says:

"The principles upon which a court of equity exercises its peculiar jurisdiction to enforce the specific performance of contracts are well known, and have been of frequent consideration and application in the past decisions of this court. The court will not intervene, unless the contract is fair, just, reasonable, and equal in all its terms and parts, is founded upon an adequate consideration, and its specific execution is free from hardship and oppression. If, on either of these points, there be a well-founded objection, the court abstains from interference, leaving the party complaining of a violation of the contract to the remedies afforded him in courts of law. In the exercise of the jurisdiction, the court is invested with a discretion; not arbitrary or capricious, but a sound judicial discretion, molding and tempering its action, or the refusal to act, in view of the circumstances of the particular case, and from them determining whether the conscience of the party charged with a violation of the contract is so affected, that moral and equitable duty compel him to a strict performance, rather than to a payment of such damages as a court of law would award

against him. A primary duty of the court is to examine the contract, not merely as a court of law would examine it, to ascertain what the parties have in terms expressed, but what in truth was the real intention of the parties, and to carry that intention into effect; or, if it cannot be carried into effect, to leave the parties to their legal remedies." Tombigbee Valley R. R. Co. v. Fairford Lbr. Co., supra.

As to the utility of that remedy, we are not required to say anything at this time.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE, J., concur in the opinion, THOMAS, MILLER, and BOULDIN, JJ., concur in the conclusion.

GARDNER, J. (dissenting.) Contracts of the character here involved and the remedy of specific performance for their enforcement are specifically authorized by legislative enactment (§§ 7142, 7143, Code of 1923), and they have met with the test of review in this court (Warren v. Ala. Farm Bureau Cotton Ass'n, 213 Ala. 61, 104 So. 267), wherein is the following language:

"But the statute in this case gives the remedy by injunction to prevent threatened breaches of the contract by association members in the disposition of their cotton, and by their contract they have expressly assented thereto. We can see no practical difficulty in the specific enforcement of this single feature of the contract for a single season; and the objections based upon the want of mutuality or remedy and the adequacy of the remedy at law are eliminated by the terms of the statute and the contract made thereunder."

Like contracts under legislative approval have frequently been before courts and upheld. Tobacco Ass'n v. Patterson, 187 N. C. 252, 121 S. E. 631; Tobacco Ass'n v. Harvey & Son, 189 N. C. 494, 127 S. E. 545; N. C. Cotton Growers' Ass'n v. Bullock, 191 N. C. 464, 132 S. E. 154.

The authorities, of course, recognize that the rights of a bona fide mortgagee must be protected. The case of Tobacco Ass'n v. Patterson, supra, is analogous to the instant case. There the mortgagee was not made a party, and it was held that the decree rendered should be without prejudice to his rights, but that a decree of specific performance against the defendant was proper. The opinion uses the following language:

"But as to this defendant, and on the facts as presented in this record, he having practically admitted that he has broken his contract with plaintiff and intends to continue to do so, it is not for him to decide by his own ipse dixit what is or is not a valid lien, or the extent of it, and, in our opinion, he should be restrained to the hearing from voluntarily and personally making any further disposition of his crop other than as required by his contract with plaintiffs, either of the crop of 1923, or any other crop coming into his possession and control and ownership during the life of the contract, and subject to its provisions."

Conceding, for the purposes here in hand, the bona fides of the mortgage transaction here involved, in my opinion the decree of the court below should be affirmed, but modified so as to specifically state that it is without prejudice to the rights of the mortgagee. Such was the course pursued by the North Carolina court in the Patterson Case, supra; and I think correctly so.

The contract discloses that it was in contemplation of the parties that defendant might desire to mortgage his crops and provides that the complainant association shall have the right to "take delivery of his cotton and pay off all or part of the crop mortgage for the account of the grower, and charge the same against him individually." In this case, it appears from the testimony of these mortgagees that they were unwilling to make a transfer of the mortgage to complainant upon the payment of the indebtedness without the consent of the defendant. When the relationship of the defendant to the mortgagees is considered in connection with this admission on their part, and the further fact that the mortgage was executed subsequent to the time it became defendant's duty to deliver his cotton to complainant, and that the mortgage embraced considerable other property, including valuable real estate, while the amount of cotton on defendant's premises was only about 12 bales, and that defendant had become dissatisfied as a member and unwilling to pool his cotton for that year, and refusing to give to agents of complainant the name of the mortgagees, the bona fides of the transaction may be seriously questioned, and, indeed, it may be reasonably inferred from all the circumstances in evidence that it was resorted to as a means of evasion of the contract on defendant's part.

In any aspect of the case, I am of the opinion the decree should be affirmed, and therefore respectfully dissent.